**EMERY MINING CORPORATION,**
**Petitioner/Appellant,**

**v.**

**SECRETARY OF LABOR, MINE SAFETY & HEALTH ADMINISTRATION ("MSHA"), and Federal Mine Safety and Health Review Commission, Respondents/Appellees,**

**United Mine Workers of America, Intervenor.**

**No. 83–2017.**

United States Court of Appeals,
Tenth Circuit.

Jan. 31, 1986.

Thomas C. Means (Timothy M. Biddle with him on brief) of Crowell & Moring, Washington, D.C., for petitioner/appellant, Emery Min. Corp.

Cynthia L. Attwood (Francis X. Lilly, Deputy Solicitor of Labor, Michael A. McCord, Counsel, Appellate Litigation, and Linda L. Leasure, Atty., with her on brief), U.S. Dept. of Labor, Office of the Solicitor, Arlington, Va., for respondent/appellee, Secretary of Labor.

Earl R. Pfeffer, Washington, D.C., for intervenor, United Mine Workers of America.

Before BARRETT and MOORE, Circuit Judges, and THEIS,* District Judge.

BARRETT, Circuit Judge.

Emery Mining Corporation (Emery) seeks review of an order of the Federal Safety and Health Review Commission (Commission) affirming the decision of an administrative law judge (ALJ) finding that Emery had violated the Federal Mine Safety and Health Act of 1977, 30 U.S.C. § 801 *et seq.* (Act). This is a case of first impression.

Emery operates an underground coal mine in Emery County, Utah, and is an "operator" under the Act. Section 115(a) of the Act provides in part:

Each operator of a coal or other mine shall have a health and safety training program which shall be approved by the Secretary.... Each training program approved by the Secretary shall provide as a minimum that—

(1) new miners having no underground mining experience shall receive no less than 40 hours of training if they are to work underground....

Section 115(b) of the Act provides in part:

Any health and safety training provided under subsection (a) of this section shall be provided during normal working hours. Miners shall be paid at their normal rate of compensation while they take such training, and new miners shall be paid at their starting wage rate when they take the new miner training.

Section 3(g) of the Act defines a miner as "any individual working in a coal or other mine."

Prior to the adoption of the Act in 1977, Emery hired its new miners and sent them to the College of Eastern Utah for pre-employment training courses. After passage of the Act, Emery continued this practice for several years. During 1979, however, Emery experienced a 48% turnover in inexperienced miners; 450 were hired and 190 terminated in the first 3 months. (R., Vol. I at 262, ALJ Findings of Fact No 11.)

On January 1, 1980, Emery changed its hiring policy. Under its new hiring policy Emery hired only experienced miners or those applicants who had completed a 32 hour training program for new miners required by § 825(a). Emery did not pay its new miners for their time in taking the training course. Rather, as set forth, Emery hired only experienced miners or those who had already taken an approved training course. The reason for Emery's change in the personnel policy was to screen out those persons who were not interested in a mining career and thereby reduce the turnover rate. (*Id.*, ALJ Findings of Fact No. 13.)

On September 22, 1980, the Secretary of Labor (Secretary) filed a complaint of discrimination against Emery on behalf of twelve Emery employees, each of whom had been hired after January 1, 1980, and each of whom had personally paid for their training courses prior to being employed by Emery. In his complaint, the Secretary alleged that Emery had discriminated against the twelve in violation of the Act by failing to compensate them for their training. The Secretary requested an order directing that Emery "pay each complainant back wages at the normal rate of compensation during training, and reimbursement for all such training." (R., Vol. I at 2.)

---

* The Honorable Frank G. Theis, United States District Judge for the District of Kansas, heard oral argument but did not participate in this opinion.

After an administrative hearing the ALJ found: the twelve applicants (complainants) successfully completed, at their own expense, 32 hours of training at a training course approved under the Act; some of the twelve complainants initially contacted Emery and were referred to Job Service[1] where they were advised to take 32 hours of mining training, and, subsequent to completing the training at their own expense, were hired by Emery; and some of the complainants initially contacted Job Service where they were advised to take the mining training courses and, subsequent to completing the training at their own expense, were hired by Emery.

The ALJ also found that Emery has the right to impose legitimate pre-employment qualifications on those who wish to be employed at its mines. However, the legitimacy of Emery's pre-employment requirement of 32 hours of miner's training depends on whether it conflicts with the Act. The ALJ reasoned that because the Act places the responsibility for training of miners on the operators, Emery's pre-employment qualification failed since it was in conflict with the statutory right to training provided for in the Act. The ALJ found that Emery discriminated against the complainants, in violation of the Act, by requiring them to secure on their own time and at their own expense the 32 hours of training.

After the ALJ entered a decision finding that Emery had discriminated against the twelve in violation of the Act, he ordered Emery to pay each complainant: four days back pay in the amount of $263.12; tuition costs for the training program; and, where applicable, mileage and incidental costs for meals and motel expenses. The ALJ also assessed Emery a civil penalty of $1,000 for violating the Act.

On appeal the Commission affirmed the ALJ's decision. In so doing the Commission found: an employer has the right to choose its employees; and, § 825 grants two separate, related rights, i.e., to receive 40 hours of safety training before working underground *and* to be compensated for the time and expenses of that training by the mine operator. While the Commission found that Emery's policy of requiring training prior to employment did not violate the Act, it found Emery did violate the Act when, after hiring the complainants as new miners, it refused to compensate them for their 32 hours of training while nevertheless relying on that training to satisfy Emery's obligations under the Act.

In its petition for review, Emery contends it is not required to compensate persons for training received prior to the time they were employed as miners, that the Commission's decision is arbitrary, and that the Commission improperly allowed the ALJ's award of expenses to stand.

**Discussion**

Emery contends that the Act requires compensation only for individuals who receive training while they are miners and that the Commission's theory "that Emery must pay wages to and the training expenses of those persons who took the training on their own and were subsequently hired finds no support in the language of the Act." (Brief of Petitioner Emery Mining Corporation at 19.) Emery contends that the Commission erred in finding that Emery violated the Act when Emery, after hiring the complainants as new miners, refused to compensate the miners for their training while simultaneously relying on that training to satisfy the training requirements of the Act.

We hold, based on the record and with particular reference to those portions thereof which establish beyond cavil that the applicants voluntarily took the courses without any relationship to Emery and that Emery's pre-employment policy of experience or training was adopted solely for the bona fide and legitimate business reason to screen out those persons who were not interested in a mining career thus reducing Emery's turnover rate, that Emery's hiring policy did not violate the Act. The ALJ and Commission erred in finding Emery in violation of the Act and liable for back

---

1. An agency of the State of Utah Department of Employment Security.

wages, training and related expenses of the twelve complainants. We must deny enforcement of the Commission's order.

Significantly, neither the Act, nor any of the detailed regulations governing its implementation, address the precise issue presented here: whether a mine operator must pay for the training courses and related expenses assumed by an individual who voluntarily takes the courses on his own initiative and who, during that time, is not associated with or employed by the mine operator?

During hearings before the Commission Emery repeatedly argued that it should not have to pay for the training expenses herein:

I want to emphasize *three points* about Emery's pre-employment criteria. *First,* there was absolutely no obligation on the part of any individual, including these 12 claimants, to take the training; it was totally voluntary.

*Second,* Emery had no relationship whatsoever with any of these individuals when they took the training. Emery did not even know who they were.

*Third,* once an individual completed the training, he or she had no obligation to Emery at all. The person was free to work for another mining company, or choose to not work in mining at all.

Now, both MSHA [Mine Safety and Health Administration] and the Union appear to agree that Emery like any employer, is free to impose any legitimate pre-employment qualifications it desires. For instance, if Emery wanted to do so, it could simply say that it was only going to hire individuals who had mining engineering degrees.

\* \* \* \* \* \*

However, both MSHA and the Union argue that Emery has an obligation to pay inexperienced individuals for whatever basic training they receive prior to the time they are employed.

Nothing in the Act or the legislative history suggests that a new employee must be paid wages and expenses for the time spent in a course he voluntarily took prior to the time he was employed.

(R., Vol. I at 383–84 (emphasis supplied).) Furthermore § 802(g) defines a "miner" as "any individual working in a coal or other mine." Section 825 requires each mine operator to have a training program and that "new miners" having no underground experience shall receive 40 hours of training. Section 825 also provides that "miners" receiving training under the section shall be compensated while taking the training.

■ It is uncontested that none of the twelve complainants herein was a *miner* as defined by the Act *nor* an employee of Emery at the time they took the training for which they now seek compensation. We hold that because the complainants were not miners as defined by the Act, they are not entitled to compensation for the 32 hours of training they voluntarily undertook, "back wages," and other expenses incurred in completing the training program.

The Secretary, while acknowledging that the twelve complainants were not employed by Emery or any other mine operator at the time they took their training programs, argues that Emery cannot limit its applicant pool to individuals who have received thirty-two hours of training, and that Emery must pay the complainants back wages, tuition and related expenses incurred in receiving their training. Emery responds that it has the right to impose reasonable prehiring qualifications, including the right to hire only experienced miners or applicants, and that, accordingly, it is not obligated to pay for the complainants' training.

Emery's position is supported by the Commission's finding that the Act does not restrict a mine operator's "prerogative of setting pre-employment qualifications based on experience or training":

An employer has the right to choose its employees. *See NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 45–46 [57 S.Ct. 615, 628, 81 L.Ed. 893] (1937). This principle has been stated succinctly as follows: "[A]n employer may exercise its right to refuse to hire for any reason

or no reason at all as long as statutory or constitutional provisions are not violated." *Carter v. Seaboard Coast Line Railroad Co.*, 392 F.Supp. 494, 499 (S.D. Ga.1974). Further, statutes that potentially limit an employer's right to select its employees, for example Title VII, are not violated when an employer refuses to hire an applicant protected by such an Act because the applicant lacks bona fide occupational qualifications. *See, e.g., Griggs v. Duke Power Co.*, 401 U.S. 424, 436 [91 S.Ct. 849, 856, 28 L.Ed.2d 158] (1971). We believe that in the Mine Act Congress did not restrict a mine operator's prerogative of setting pre-employment qualifications based on experience or training. Thus, Emery's policy of requiring inexperienced job applicants to obtain 32 hours of MSHA-approved training prior to hire does not violate the Mine Act.

(R., Vol. I at 450–51.)

We hold that the Commission properly found that Emery's pre-employment policy of requiring 32 hours of training did not violate the Act. However, under the facts and circumstances of this case, we must hold that the Commission erred when it subsequently found that Emery violated the Act by refusing to pay its new hires for back wages, tuition and related expenses they incurred in receiving 32 hours of training before being employed by Emery. We agree with Emery that "[n]othing in the Act or the legislative history suggests that a new employee must be paid wages and expenses for the time spent in a course he voluntarily took prior to the time he was employed." (R., Vol. I at 383).

Within its decision the Commission candidly acknowledged that "none of the Secretary's otherwise extensive regulations" addressed the "situation encountered in this case." Also, although the Secretary argues laboriously that Emery's construction of the term "miner" as defined under the Act is too restrictive, we view Emery's analysis to be the more persuasive.

 We cannot infer legislative provisions out of silence. *Quivira Mining*

*Company v. United States E.P.A.*, 728 F.2d 477 (10th Cir.1984). The parties concede that none of the "otherwise extensive regulations" or the Act itself addresses the issue before us. The Act requires training for "new miners," and it defines "miners" as "individuals working in a coal or other mine." None of the twelve complainants were "miners" under the Act or employed by Emery at the time they undertook their training. When, as here, a statute is clear on its face, we cannot expand the Act beyond its plain meaning.

We deny enforcement of the Commissioner's order.